**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**July 15, 2003**

Charles R. Fulbruge III
Clerk

REVISED AUGUST 20, 2003

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-41428
_____

UNITED STATES OF AMERICA

                    Plaintiff - Appellant

v.

ERIC BANKS

                    Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Texas, Marshall

Before KING, Chief Judge, and DAVIS and BENAVIDES, Circuit
Judges.

KING, Chief Judge:

     Defendant-Appellee Eric Banks was charged with five counts
of possession of a firearm while subject to a restraining order
in violation of 18 U.S.C. § 922(g)(8) (2000).  The district court
dismissed these counts because it found that the restraining
order to which Banks was subject was not issued after a
"hearing," as § 922(g)(8)(A) requires.  The United States now
appeals the dismissal of the counts, arguing that Banks did
receive a "hearing" within the meaning of § 922(g)(8)(A).  We
agree, and thus we reverse.

### I.  FACTUAL AND PROCEDURAL HISTORY

## A. Facts

The facts are, for the most part, undisputed. The prosecution in this case arose out of the investigation of an explosion at a trailer home owned by Alisha Barrington in Atlanta, Texas, in January 2002. When Barrington opened the door to enter her trailer home, an explosive device detonated, destroying much of the trailer, knocking Barrington to the ground, and killing her cat.[1] The local police, joined by agents from the Bureau of Alcohol, Tobacco, and Firearms (collectively "the police"), concluded that the explosive device was constructed from a metal pipe.

The police investigation soon focused on Defendant-Appellee Eric Banks, Barrington's ex-boyfriend who had previously lived with her. The police visited Banks at his home and asked for consent to search his home and his truck. Banks gave consent, and the police found material implicating Banks in the explosion, including electrical connections for splicing wires and a receipt for electrical supplies and a pipe. The police also found two firearms. The police then obtained a warrant to search Banks's home and his truck. During the warrant search and the search accompanying Banks's subsequent arrest, the police found two other firearms, as well as other evidence implicating Banks in the explosion.

At the time of the explosion, Banks was subject to a temporary protective order obtained by Barrington. On August 1,

---

[1] Due to a previous fire at the home (for which Banks was also under investigation), Barrington no longer lived there, but her cat did.

2001, after her relationship with Banks ended and Banks threatened her personal safety in numerous ways,[2] Barrington filed an application for a temporary protective order through the Cass County, Texas, District Attorney's Office. Barrington verified the application under oath. The application contained a statement of abuse, which detailed Banks's threats and physical and emotional abuse. A deputy sheriff served Banks with notice, advising him of a hearing scheduled for August 13. Banks, through his attorney, postponed the hearing at least once.

The Assistant District Attorney on the case then became worried for Barrington's safety and obtained a temporary ex parte protective order on October 10.[3] The temporary ex parte order, which lasted for fourteen days, explicitly prohibited Banks from possessing a firearm. Banks was served with a copy of the temporary ex parte order on October 15, when he was in court on charges of making terroristic threats. The presiding district judge, Judge Leon Pesek, gave Banks the ex parte order and advised him that a hearing on the application for the temporary protective order was set for October 22.

On October 22, Banks appeared in court and consented to an agreed temporary protective order. Judge Jack Carter was the presiding judge that day. There is conflicting evidence about

---

[2]     Banks and Barrington lived together from the fall of 1998 to January 2001. After they broke up, there is evidence that Banks pulled a gun on Barrington's stepfather, tried to run Barrington off the road, shot at Barrington's car, shot at a car that resembled Barrington's, defaced Barrington's car, and started the fire at Barrington's trailer home.

[3]     The temporary ex parte order was signed by Judge Jack Carter.

who was in court that day. Barrington testified at the hearing on Banks's motion to dismiss the federal indictment that she and the Assistant District Attorney were present, while defense counsel stated that only he, Banks, and the Assistant District Attorney were present. The parties simply informed the court that they had reached a settlement. No witnesses were called and no evidence was presented other than the protective order itself. Banks later signed the agreed order in his attorney's office. Banks's attorney forwarded the signed order to the Assistant District Attorney, who signed the order and forwarded it to Judge Pesek. Judge Pesek then signed the order in his chambers outside the presence of either of the parties and returned it to the District Attorney's office for filing. The agreed order specifically stated that Banks could not possess a firearm while subject to the order.

### B.    Procedural History

Banks was charged with five counts of possession of a firearm[4] while subject to a restraining order in violation of 18 U.S.C. § 922(g)(8) (2000) and one count of possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d) (2000).[5]

Banks filed a motion to dismiss the first five counts of the indictment, arguing that he was not subject to a court order issued after a "hearing," as 18 U.S.C. § 922(g)(8)(A) requires.

---

[4]    Banks was charged with one count for each of the four firearms found during the consent, warrant, and arrest searches and one count for the explosive device.

[5]    This indictment superseded the first indictment, which charged only four counts of possession of a firearm while subject to a restraining order in violation of 18 U.S.C. § 922(g)(8).

4

The United States initially opposed the motion, arguing that the matter could not be determined pretrial. The district court agreed and advised the parties it would deny the motion. But, the United States then agreed to waive its opposition to the pretrial determination. The district court held an evidentiary hearing on the motion.

The district court entered an opinion and order dismissing the first five counts of the indictment based on 18 U.S.C. § 922(g)(8). The district court held that the agreed order was not issued after a "hearing" within the meaning of § 922(g)(8)(A). The district court read United States v. Spruill, 292 F.3d 207 (5th Cir. 2002), to require a hearing where evidence is presented and witnesses are called, so that an uncontested order could not be the basis of a § 922(g)(8) prosecution.[6]

The United States now appeals, arguing that Banks received a hearing within the meaning of 18 U.S.C. § 922(g)(8)(A).

## II.  STANDARD OF REVIEW

A challenge to an indictment based on the legal sufficiency of uncontested facts is an issue of law reviewed de novo. See United States v. Moore, 73 F.3d 666, 668 (6th Cir. 1996) (using the de novo standard to review a motion to dismiss an indictment based on undisputed facts).

## III.  DISCUSSION

---

[6]    The district court did not resolve the factual dispute about who was present in court on October 22, 2002, because it determined that "the record was otherwise clear that no hearing was conducted." No party argues to this court that resolution of that factual dispute is required to decide this appeal.

The counts of the indictment at issue were based on 18 U.S.C. § 922(g)(8), which states:

> (g) It shall be unlawful for any person --
>     (8) who is subject to a court order that --
>         (A) <u>was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate</u>;
>         (B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and
>         (C) (i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury . . .
>     to . . . possess in or affecting commerce[] any firearm or ammunition . . . .

18 U.S.C. § 922(g)(8) (2000) (emphasis added). The only portion of § 922(g)(8) at issue in this appeal is the requirement in subsection (A) that the court order be "issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate." Id.

The question before us is thus whether the process leading up to the agreed temporary protective order[7] in this case qualifies as a "hearing." The statute itself does not define the term "hearing." Our key case addressing the "hearing" requirement is United States v. Spruill. See 292 F.3d 207 (5th Cir. 2002). In that case, Spruill argued that he did not receive

---

[7]    The order that forms the basis for the indictment in this case is the temporary protective order, not the ex parte order, because the ex parte order expired and only the temporary order was in effect when Banks was found with firearms.

a hearing as § 922(g)(8)(A) requires.  Id. at 214.  The order at issue was an agreed protective order that was issued even though Spruill never appeared before a judge and no evidentiary hearing was held.  See id. at 210-11.  Further, Spruill was not represented by counsel and was illiterate.  See id.  Spruill went to see the Assistant District Attorney on the case, who explained the purpose of the protective order to Spruill and told him where to sign if he agreed to the order.  See id.  Spruill signed the agreed order and it was forwarded to a judge.  See id.

The Spruill court determined that this process did not meet the requirements of § 922(g)(8)(A).  See id. at 215-21.  The court noted that "no hearing was ever set and Spruill received no notice of any hearing."  Id. at 217.  The court also noted that Spruill never appeared before a judge, stating that "the court's approval of the order agreed to out of court . . . clearly does not carry with it the same degree of assurance that the issuing court itself determined that such an order was necessary to prevent family violence as would an order issued after an actual hearing."  Id. at 217.  The court cited, with approval, the Pennsylvania Supreme Court's definition of a "hearing":

> [A] hearing intends a judgment bench attended by judges or officials sitting in a judicial capacity, prepared to listen to both sides of the dispute and to consider deeply, reflect broadly, and decide impartially, and the mere consideration of a report moving across one's desk[] is not a hearing.

Id. at 218 (quoting Commonwealth v. Davis, 612 A.2d 426, 429 (Pa. 1992)) (emphasis added in Fifth Circuit opinion).  The court thus interpreted § 922(g)(8)(A) to mean that "the hearing must have been set for a particular time and place and the defendant must

7

have received notice of that and thereafter the hearing must have been held at that time and place." Id. at 220.

The hearing requirement contained in § 922(g)(8)(A) was met in this case. Banks had "actual notice" and "an opportunity to participate," as 18 U.S.C. § 922(g)(8)(A) requires, and the only reason that evidence (in addition to Barrington's verified statement of abuse) was not introduced is because Banks consented to the agreed protective order. On October 15, Banks was advised in open court that a hearing was set for October 22 on the temporary protective order. Banks, his attorney, the Assistant District Attorney, and perhaps Barrington appeared in court on the scheduled date for the hearing. The presiding judge, Judge Carter, sat on the bench, ready for the hearing; the evidence indicates that he was "prepared to listen to both sides of the dispute and to consider deeply, reflect broadly, and decide impartially." Id. (quoting Commonwealth v. Davis, 612 A.2d 426, 429 (Pa. 1992)). Banks had an opportunity to put on evidence, but he did not avail himself of that opportunity. Though neither the Assistant District Attorney nor defense counsel put on live testimony, there was evidence before the court supporting issuance of the protective order, in the form of Barrington's statement of abuse. This statement was verified under oath and attached to the application for the temporary protective order. As Spruill requires, the hearing in this case was "set for a particular time and place and the defendant . . . received notice of that and thereafter the hearing [was] held at that time and place." Id. Banks thus received a "hearing."

8

Banks argues that his case is factually indistinguishable from Spruill because both cases involved agreed orders and, thus, there was no "hearing" in this case. But the facts of Spruill are distinguishable in many respects. In Spruill, no application for a protective order was ever filed, see Spruill, 292 F.3d at 213 n.7, while in this case, such an application was filed and it contained a detailed statement of abuse. In Spruill, the date for a hearing was never officially set, see id. at 210-11, 216, while in this case, the hearing date was set and the hearing was postponed by Banks at least once. Spruill was not represented by counsel and was illiterate, see id. at 210-11, while Banks was represented by counsel and is literate. The protective order in Spruill did not specify that Spruill could not possess a firearm, see id. at 209 n.1, but the protective order in this case did clearly state that Banks may not possess a firearm. Spruill never appeared before a judge, see id. at 210-11, 216, but Banks did appear before a judge and had an opportunity to contest the protective order. Spruill had no chance to present his side of the case, see id., while here Banks clearly did.

Banks effectively asks us to hold that an agreed order can never be the basis for an 18 U.S.C. § 922(g)(8) prosecution. That we will not do. First, the Spruill court did not hold that an agreed order cannot be the basis for a § 922(g)(8) prosecution, though the court certainly could have done so. In fact, the Spruill court cited, with approval, United States v. Wilson, where the Seventh Circuit found that a defendant consenting to an agreed order received a "hearing" sufficient to

9

satisfy procedural due process.[8]  See Spruill, 292 F.3d at 219

n.15 (citing Wilson, 159 F.3d 280, 289-90 (7th Cir. 1998)).  In

that case, Wilson, his wife, and her attorney appeared in court.

See Wilson, 159 F.3d at 284.  Wilson and his wife's attorney then

retired to the judge's chambers for a hearing.  See id.  The

judge explained the order's purpose and terms and Wilson, acting

pro se, indicated that he understood the order and consented to

its terms.  See id.  The Spruill court distinguished Wilson on

its facts, noting "the contrasts to Spruill's case, in which no

hearing was set, given notice of, or held, there was no

appearance before the judge, and the order was explained to the

illiterate Spruill by the protected party's attorney."  Spruill,

292 F.3d at 220 n.15.

Indeed, this court has previously anticipated that agreed

orders may be the basis for a § 922(g)(8) prosecution.  In United

States v. Emerson, we indicated that uncontested orders may form

the basis for a § 922(g)(8) prosecution in the context of the

defendant's Second Amendment challenge to the statute.  See 270

F.3d 203 (5th Cir. 2001), cert. denied, 536 U.S. 907 (2002).  In

Emerson, we recognized that "the Second Amendment does protect

individual rights" but that those rights may be "subject to . . .

limited, narrowly tailored specific exceptions or restrictions

---

[8]     Wilson did not raise the exact same issue as Spruill
because Wilson argued that the hearing violated his procedural
due process rights, see Wilson, 159 F.3d at 289-90, while Spruill
argued that the government failed to prove the "hearing" element
of a § 922(g)(8) offense, see Spruill, 292 F.3d at 214.  The
Spruill court's citation of Wilson is nonetheless helpful because
it indicates that the Spruill court recognized that an agreed
order could be the basis for a § 922(g)(8) prosecution.

for particular cases that are reasonable and not inconsistent with the right of Americans generally to individually keep and bear their private arms." Id. at 261. Emerson argued that prosecution under § 922(g)(8)(C)(ii) violated his Second Amendment right because the protective order at issue did not contain an express judicial finding that he represented a future danger. See id. at 260-61. We rejected Emerson's argument, finding that

> Congress in enacting section 922(g)(8)(C)(ii) proceeded on the assumption that the laws of the several states were such that court orders, issued after notice and hearing, should not embrace the prohibitions of paragraph (C)(ii) unless such either were not contested or evidence credited by the court reflected a real threat or danger of injury to the protected party by the party enjoined.

Id. at 262 (emphasis added). We explained further:

> With respect to temporary injunctions and similar orders to be issued only after notice and hearing, the Texas rule of law, as we have noted, is that such an order, at least to the extent contested and explicitly prohibiting acts such as are covered by section 922(g)(8)(C)(ii), may not properly issue unless the issuing court concludes, based on adequate evidence at the hearing, that the party restrained would otherwise pose a realistic threat of imminent physical injury to the protected party, and this is so regardless of whether or not Texas law requires the issuing court to make on the record express or explicit findings to that effect.

Id. at 264 (emphasis added). In Emerson, then, we contemplated that an agreed protective order could be the basis for a § 922(g)(8) prosecution. Further, in United States v. Henry, we affirmed the defendant's § 922(g)(8) conviction that was based on an agreed protective order, though we did not explicitly consider whether the "hearing" requirement had been met. See Henry, 288 F.3d 657, 660-64 (5th Cir.), cert. denied, 123 S. Ct. 224 (2002).

11

Reading <u>Spruill</u>, <u>Emerson</u>, and <u>Henry</u> in harmony, we find that an agreed order can form the basis for a § 922(g)(8) prosecution at least where a hearing on a domestic violence order was set for a particular time and place, the defendant received notice of it, the defendant appeared in court with an attorney, the judge was present and ready to hear his case, the court had evidence before it that domestic violence had occurred, and the court gave the defendant an opportunity to be heard.

Were we to hold that an agreed order could never be the basis for a § 922(g)(8) prosecution, a defendant with all the protections that the statute contemplates could simply consent to an agreed order to escape a later federal prosecution. In this case, Banks's hearing was set for a particular date, he received notice of it in open court, and he appeared with his attorney on the date of his hearing. Judge Carter sat on the bench, prepared to listen to both sides of the dispute and render an impartial decision. Before the court was Barrington's verified statement of abuse. Banks had an opportunity to present evidence on his own behalf, but he chose not to do so, instead consenting to an agreed protective order. On these facts, the "hearing" requirement contained in 18 U.S.C. § 922(g)(8)(A) was met.

## IV. CONCLUSION

For the foregoing reasons, we REVERSE the district court's order dismissing the counts of the indictment based on 18 U.S.C. § 922(g)(8) and REMAND for further proceedings.

12