**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellant,*

          v.

BRAD WAYNE YOUNG,
          *Defendant-Appellee.*

No. 05-30313

D.C. No.
CR-05-02007-FVS

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Fred L. Van Sickle, Chief Judge, Presiding

Argued and Submitted
March 8, 2006—Seattle, Washington

Filed August 17, 2006

Before: Diarmuid F. O'Scannlain, Barry G. Silverman, and
Ronald M. Gould, Circuit Judges.

Opinion by Judge O'Scannlain

**COUNSEL**

K. Jill Bolton, Assistant United States Attorney, Spokane, Washington, argued the cause for the appellant. James A. McDevitt, United States Attorney, was on the briefs.

Rebecca L. Pennell, Federal Defender, Yakima, Washington, argued the cause and was on the brief for the appellee.

## OPINION

O'SCANNLAIN, Circuit Judge:

We consider the conditions under which federal criminal law prohibits an individual from possessing a firearm if he is the subject of a state domestic violence restraining order.

I

City of Union Gap, Washington, police arrested Brad Young, the defendant-appellee, on December 29, 2004, based on his violation of a Washington state Domestic Violence No Contact ("DVNC") order. Police searched Young and located a .22 caliber pistol in his pocket. After having been read his *Miranda* rights, Young admitted that the gun was his.[1]

It is a federal offense for those against whom a domestic violence restraining order has been issued "after a hearing of which such person received actual notice, and at which such person had an opportunity to participate," to possess a firearm. 18 U.S.C. § 922(g)(8)(A). Young was indicted by an Eastern District of Washington federal grand jury two weeks after his Union Gap arrest and was later tried for possessing a firearm in violation of § 922(g)(8).[2]

A

Because § 922(g)(8) only applies to certain restraining orders and significant interplay between state and federal court proceedings is involved, we review the facts relating to the issuance in state court of the predicate DVNC order,

---

[1]Young also admitted that he received the DVNC order by personal service, and that the DVNC order prohibited him from contacting the victim and from possessing firearms.

[2]The record indicates neither when nor why Young was transferred from state to federal custody.

which stems from an arrest earlier in December 2004 for Young's violation of a protective order and for felony harassment under Washington state law.[3] As a result of the earlier arrest, a Washington state court issued two separate DVNC orders against Young.

1

The first DVNC order was issued at Young's December 6, 2004, preliminary hearing. Yakima County Superior Court Judge Michael Schwab concluded that there was "probable cause to believe that [Young] may have been involved in the offense of felony violation of a no contact order." Judge Schwab explained to Young, "This does not mean that you're guilty of anything. On Wednesday morning [December 8, 2004] you'll be advised officially of any charges." Judge Schwab appointed Young counsel and issued a DVNC order ("the December 6 DVNC order"): "I'm going to issue a domestic violence no contact order which requires you to stay away from Lena [sic[4]] Emily Perez, whether she wants you to have contact with her or not. We'll give you a copy of this and you need to read it carefully." At the close of the hearing, Judge Schwab stated that he might reconsider the bail amount at the December 8 arraignment, but he did not indicate whether he would reconsider the DVNC order.

At the conclusion of the preliminary hearing, the prosecuting attorney handed Young a copy of the December 6 DVNC order and a copy of the court order containing the contact information for Young's court-appointed attorney. The DVNC order further stated: "This order is entered together with the order setting conditions of release in this case. ([Rev.

---

[3]This portion of the opinion sets forth the evidence given at trial. In Part II, when evaluating the judgment of acquittal, we will draw all conclusions in favor of the government, as is required. *See Glasser v. United States*, 315 U.S. 60, 80 (1942).

[4]The court was referring to Laina Perez.

Code Wash.] 10.99.040; 10.99.045.) It shall remain in effect until further order by this Court."[5]

### 2

The second DVNC order—identical to the first, and the predicate order for the federal offense—was issued on December 8, two days after Young's preliminary hearing, when Judge Schwab began the formal arraignment under the state felony harassment charge by again advising Young of his rights, including his right to counsel.[6]

Susan Arb—a Senior Deputy Prosecuting Attorney with the Yakima County Prosecuting Attorney's Office recognized as an expert in preliminary hearings and arraignments in Yakima County Superior Court—later related in Young's federal trial that "during the arraignment the Court will consider conditions of release. . . . One of the conditions of release is often a No Contact Order. And that's always considered in domestic violence cases, even if other conditions of release are not."[7] Arb also explained that "Any time [the state prosecutors] file a domestic violence charge, . . . the prosecutors also request a No Contact Order, ask the judge to issue that No Contact Order."

Young's counsel was not present at the December 8 state court hearing, but an attorney from the county prosecutor's office gave Young a copy of the criminal information and Judge Schwab explained the charges to him. After reducing

---

[5]The Revised Code of Washington 10.99.040(3) states: "At the time of arraignment the court *shall determine whether a no-contact order shall be issued or extended. . . .*" (emphasis added). However, during the district court trial, the prosecution did not present the jury with the content of Rev. Code Wash. 10.99.040(3).

[6]The record does not disclose whether Young and his attorney had any contact between the December 6 and December 8 hearings.

[7]Indeed, as noted above, Rev. Code Wash. 10.99.040(3) *requires* the court to reconsider the DVNC order at the arraignment.

the bail amount to $5,000, Judge Schwab issued a new DVNC order ("the December 8 DVNC order"):

> Court: I'm also issuing a new domestic violence no contact order which requires you to stay away from Lena [sic] Perez whether she wants to have contact with you or not; do you understand that?
>
> Young: No problem.
>
> Court: This is a very serious matter. We expect people to obey these orders. We hope you'll read this carefully. It contains very specific warnings.[8]

Young then expressed some confusion as to the nature of the charges against him. Judge Schwab explained:

> Count one is a charge of assault in violation of a protection order. The allegation is that you assaulted Lena [sic] Perez. That doesn't mean that you're guilty of it. That's what they're saying happened. It remains to be seen whether or not you did it. So the purpose of this is just to advise you about what they're claiming. The mere fact that they say it doesn't make it so.

The prosecuting attorney then explained the terms of the new DVNC order to Young and gave him a copy. Like the prior order, the December 8 order indicated that it would remain in effect until lifted by the court and specifically noted

---

[8]Among the warnings, the DVNC stated: "Effective immediately, and continuing as long as this protection order is in effect, you may not possess a firearm or ammunition. 18 U.S.C. section 922(g)(8). A violation of this federal firearms law carries a maximum possible penalty of 10 years in prison and a $250,000 fine."

that federal law prohibited Young from possessing a firearm. The DVNC order stated that "[t]he court finds probable cause to believe that this case involves a threat of domestic violence, the defendant is a credible threat to the physical safety of the victim, and that the following order is necessary to protect the victim."

At the conclusion of the December 8 hearing, Judge Schwab set a date for trial, as well as a date for a pre-trial omnibus hearing.

## B

In relevant part, 18 U.S.C. § 922(g)(8)[9] makes it a federal crime for any person:

> who is subject to a court order that—
>
> (A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;
>
> (B) restrains such person from harassing, stalking, or threatening an intimate partner[10] of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and
>
> (C)

---

[9]We have previously upheld § 922(g)(8) against a variety of challenges. *See United States v. Kafka*, 222 F.3d 1129 (9th Cir. 2000) (holding that § 922(g)(8) does not violate due process despite the lack of *mens rea* requirement); *United States v. Jones*, 231 F.3d 508 (9th Cir. 2000) (holding that § 922(g)(8) is within Congress's Commerce Clause authority).

[10]The parties stipulated that Laina Perez was an "intimate partner" of Young's.

    (i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or

    (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury; . . .

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.[11]

### 1

At Young's trial in federal district court, Judge Van Sickle instructed the jury on the elements of "actual notice" and "opportunity to participate." The jury instructions, tracking the statutory text, stated that the statute required the jury to find beyond a reasonable doubt that, "at the time the defendant possessed the firearm, the defendant was subject to a court order dated December 8, 2004, that: (A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate." The district court further instructed the jury:

It can be legal for a court to issue a no-contact order against an individual in emergency circumstances, before allowing the individual notice and an opportunity to participate. However, the federal criminal law at issue in this case only applies to those no-contact orders that have been issued after the indi-

---

[11]Young also stipulated that he knowingly possessed a firearm which had been shipped in interstate commerce.

vidual who is subject to the order has been provided notice and an opportunity to participate.

2

The jury found Young guilty of violating § 922(g)(8), but the district court overturned the jury verdict based on Young's Federal Rule of Criminal Procedure 29 motion, concluding that the prosecution had presented insufficient evidence that Young's December 8 DVNC order met the terms of § 922(g)(8)(A). The district court explained that "advance notice is an important component of due process." (Citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)). The district court reasoned that "[w]ithout advance notice, a party is unable to consult an attorney, evaluate allegations or marshal evidence. In view of these considerations, it is reasonable to conclude that § 922(g)(8) requires advance notice of a judge's intention to extend a no-contact order." Because the government presented no evidence that Young was actually aware that the December 6 DVNC order would be extended at the December 8 arraignment, the district court concluded that Young lacked sufficient notice of the proceedings.

Similarly, the district court reasoned that an "opportunity to respond" requires " 'the opportunity to present reasons, either in person or in writing, why proposed action should not be taken.' " (Quoting *United States v. Wilson*, 159 F.3d 280, 290 (7th Cir. 1998)). The district court explained that:

> The judge who presided over Mr. Young's arraignment did not allow him to consult with his attorney before issuing the no-contact order. The judge did not ask Mr. Young whether he wanted to review the report upon which the judge relied to find probable cause. The judge did not advise Mr. Young he was entitled to challenge the contents of the report. The judge did not ask Mr. Young whether he objected to

the entry of a no-contact order. . . . [H]aving exam-
ined the record as a whole, the Court concludes that
the judge who presided over Mr. Young's arraign-
ment did not provide him with a meaningful oppor-
tunity to participate in the decision-making process.

(internal notes and citations omitted). The district court con-
cluded that "the jury lacked evidence from which it could
have found beyond a reasonable doubt that Mr. Young
received either actual notice of, or an opportunity to partici-
pate in, the hearing that led to the issuance of the no-contact
order," and it entered a judgment of acquittal.

Ruling in the alternative, the district court granted Young's
motion for a new trial under Federal Rule of Criminal Proce-
dure 33(a). The court concluded that "the jury should have
been instructed that actual notice means advance notice." Fur-
ther, "the jury should have been instructed more clearly con-
cerning the factors it needed to consider in determining
whether Mr. Young received a meaningful opportunity to par-
ticipate."

The United States timely appeals from both the grant of the
Rule 29 judgment of acquittal and the alternative grant of the
Rule 33 motion for a new trial.[12]

## II

The government contends that the district court wrongly
expanded the requirements of § 922(g)(8) beyond the statu-
tory text. Young, however, argues that the statute requires a
state court hearing meeting the traditional requirements of due
process. This case requires us only to construe § 922(g)(8);

---

[12]Double jeopardy is not a concern because the jury initially convicted
Young. *See United States v. Foumai*, 910 F.2d 617, 619 (9th Cir. 1990).

we do not consider whether the procedural protections in the underlying Washington DVNC statute satisfy due process.[13]

## A

First, we address Young's argument that "Congress only attached a firearms disability to those individuals who . . . have already had a due process hearing."[14]

In *Lewis v. United States*, 445 U.S. 55 (1980), the Supreme Court construed the felon-in-possession predecessor to

[13]We review de novo the grant of a judgment of acquittal. *United States v. Johnson*, 357 F.3d 980, 983 (9th Cir. 2004). A motion for acquittal should be denied if " 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *United States v. Tisor*, 96 F.3d 370, 379 (9th Cir. 1996) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We review statutory interpretation, construction, and application de novo. *United States v. Ventre*, 338 F.3d 1047, 1052 (9th Cir. 2003).

[14]We note at the outset that there is a Circuit split as to whether § 922(g)(8) requires proof of a valid restraining order. The Fifth Circuit has squarely rejected the contention that a federal court should probe into state proceedings, noting that " 'nothing in section 922(g)(8) suggests that the validity of the particular predicate court order may be inquired into in the section 922(g)(8) criminal prosecution.' " *United States v. Hicks*, 389 F.3d 514, 534 (5th Cir. 2005), *cert. denied* 126 S.Ct. 1022 (2006) (quoting *United States v. Emerson*, 270 F.3d 203, 213 (5th Cir. 2001)). However, the Seventh Circuit's decision in *Wilson*, 159 F.3d at 289-90, by entertaining a defendant's challenge to the underlying restraining order proceedings, has implicitly concluded that a due process hearing is required. To the extent that the Seventh Circuit intended to adopt this view, we decline to follow it, as explained below, because it appears to be in tension with the Supreme Court's decision in *Lewis*.

Young argues that the Sixth Circuit has also followed *Wilson* in *United States v. Calor*, 340 F.3d 428, 431 (6th Cir. 2003). We disagree. *Calor* did not endorse the Seventh Circuit's view that the defendant could challenge the constitutionality of the state court proceedings in federal court. Rather, it interpreted the statute itself and then noted that its result was "consistent with that of the Seventh Circuit." *Id.*

§ 922(g), and held that an unconstitutional prior conviction could still qualify as a predicate conviction. *Id.* at 67. The Court explained that "federal gun laws . . . focus not on reliability, but on the mere fact of conviction . . . in order to keep firearms away from potentially dangerous persons." *Id. Lewis* contrasted that provision "with other federal statutes that explicitly permit a defendant to challenge, by way of defense, the validity or constitutionality of the predicate felony."**[15]** *Id.* at 62 (citing 18 U.S.C. § 3575(e) (repealed) and 21 U.S.C. § 851(c)(2)). Thus, *Lewis* concluded that "to limit the scope of [the predecessor to § 922(g)] to a validly convicted felon would be at odds with the statutory scheme as a whole." *Id.* at 64.

**[1]** Unlike the statutes identified in *Lewis* as allowing a challenge to a predicate offense, § 922(g)(8)—like the statute in *Lewis*—makes no such allowance. Rather, § 922(g)(8)'s only explicit requirement is that the defendant have received a hearing of which he had actual notice and an opportunity to participate. Thus, "a criminal proceeding may go forward, even if the predicate was in some way unconstitutional, so long as a sufficient opportunity for judicial review of the predicate [restraining order proceeding] exists," *United States v. Afshari*, 426 F.3d 1150, 1157 (9th Cir. 2005), and it is no defense to a prosecution under this statute that the state restraining order proceedings were unconstitutional. Other-

---

**[15]**21 U.S.C. § 851(c)(2), for example, reads:

A person claiming that a conviction alleged in the information was obtained in violation of the Constitution of the United States shall set forth his claim, and the factual basis therefor, with particularity in his response to the information. The person shall have the burden of proof by a preponderance of the evidence on any issue of fact raised by the response. *Any challenge to a prior conviction, not raised by response to the information before an increased sentence is imposed in reliance thereon, shall be waived unless good cause be shown for failure to make a timely challenge.*

(Emphasis added).

wise, "to limit the scope of [§ 922(g)(8)] to a *valid*[ ] [restraining order] would be at odds with the statutory scheme as a whole." *Lewis*, 445 U.S. at 64 (emphasis added).

**[2]** Simply, absent Congressional authorization, we will not entertain a collateral inquiry into the constitutionality of the state court restraining order proceedings which is immaterial except to the extent that the federal statute explicitly requires certain procedural protections. *Accord United States v. Hicks*, 389 F.3d 514, 535 (5th Cir. 2004) (relying on *Lewis* and concluding that "nothing . . . indicates that [§ 922(g)(8)] applies only to persons subject to a *valid*, as opposed to an *invalid*, protective order").

B

Turning to the language of § 922(g)(8)(A), Young argues that the statute "provides no specific definition" for "hearing," "actual notice," and "opportunity to participate," and that as a result, we must assume that Congress intended to require a full due process hearing. The government disagrees and contends that the language of the provision is "plain and clear," and should be interpreted narrowly. We consider the statutory requirements in turn.

1

**[3]** The government contends that the statute defines "hearing," and thus the statutory definition should control. Young, in contrast, argues that "hearing" must be interpreted in the context of the larger universe of due process jurisprudence. Section 922(g)(8), however, explicitly defines the qualities a predicate hearing must have: for the purposes of this provision, a hearing simply is a proceeding of which the defendant has "actual notice" and an "opportunity to participate." Congress's chosen definition of "hearing" apparently excludes certain types of restraining orders—such as those issued ex parte and without notice—however, we do not find any basis

in the statute for requiring that the restraining order issue after a proceeding with all the due process protections of a criminal trial.

The Sixth and Eighth Circuits have similarly resisted attempts to impose greater substantive content on the term "hearing." The Sixth Circuit explained that while "hearing" has a variety of meanings in federal law, "the term is not ambiguous in this context." *United States v. Calor*, 340 F.3d 428, 431 (6th Cir. 2003). Rather, § 922(g)(8) "straightforwardly requires that the subject of the court order be given actual notice of the proceeding and an opportunity to participate." *Id.* Thus, the Sixth Circuit "declin[ed] to embellish the hearing requirements explicitly set forth." *Id.* (citing *Wilson*, 159 F.3d at 280). The Eighth Circuit reached the same conclusion. *United States v. Lippman*, 369 F.3d 1039, 1042 (8th Cir. 2004), *cert. denied* 543 U.S. 1080 (2005) ("The statute states what is required for a hearing under § 922(g)(8). A hearing requires actual notice and an opportunity to be heard, but the statute does not require that evidence actually have been offered or witnesses called.").

**[4]** We agree with the Eighth and Sixth Circuits that, in accordance with the plain meaning of the statute, the term "hearing" refers to a proceeding of which the defendant has actual notice and an opportunity to participate.[16]

2

But Young argues that he did not have "actual notice" of the hearing because his notice was not "meaningful," as due process requires. The district court concluded that "actual notice" requires notice sufficient to satisfy due process, and therefore requires "advance notice." The government con-

---

[16]Because the statute's plain meaning controls, we may not consider the principle of lenity, whose "touchstone . . . is statutory ambiguity." *Lewis*, 445 U.S. at 65.

tends that "actual notice" should be interpreted in light of its plain meaning.

**[5]** Young argues that "actual notice" requires notice of the *content* of the hearing, rather than simply notice of the hearing itself.[17] In essence, Young reads the statute as requiring "actual notice *that a restraining order might issue*." But that is emphatically *not* what the statute says. It expressly applies to any person "who is subject to a court order that . . . was issued after *a hearing* of which such person received actual notice." The statute does not require notice of the fact that a restraining order would issue, nor does it require any other form of "advance" notice. Indeed, Congress chose to modify "notice" with "actual" rather than "advance," implying that it did *not* intend to require "advance" notice.

**[6]** Further, this definition of notice tracks the everyday, common meaning of the term, *see*, *e.g.*, *Webster's Third New International Dictionary* 1544 (3d ed. 1986) (defining "notice" as "formal or informal warning or intimation of something: announcement"), and the accepted legal definition of the term, *see*, *e.g.*, *Black's Law Dictionary* 1090 (8th ed. 2004) (stating that "[a] person has notice of a fact or condition if that person (1) has actual knowledge of it . . . ."). Here, the restraining order issued after "a hearing of which [Young] received actual notice." Nothing more is required.[18]

---

[17]We reject Young's argument, relying on *Dusenbery v. United States*, 534 U.S. 161, 170 n.5 (2002), that the word "actual" in the statutory term "actual notice" requires some heightened form of notice. *Dusenbery* noted that the term "actual notice" may be ambiguous—sometimes referring to notice by publication and sometimes referring to actual receipt of notice. Because Young was personally informed of the December 8 hearing, the distinction drawn in *Dusenbery* is irrelevant in this context. *Id.* Rather, it is clear that "actual notice" is meant to contrast with "implied notice," which would presumably be insufficient. *See Black's Law Dictionary* 1090 (8th ed. 2004) (defining "actual notice" as "[n]otice given directly to, or received personally by, a party").

[18]Young argues that without "advance notice," he could not effectively challenge the DVNC order. In some situations, of course, notice may be

Moreover, while Young argues that "actual notice" requires advance notice satisfying due process, Congress knows how to define terms when it wants to give them specific definitions at odds with everyday understanding. For example, 18 U.S.C. § 921, defines "person," "indictment," "school," and "intimate partner," each of which has a plain meaning which Congress rejected. *See* §§ 921(a)(1), (14), (26) & (32). We apply the presumption that terms not defined should be given their common, everyday meaning. *See*, *e.g.*, *Chapman v. United States*, 500 U.S. 453, 462 (1991) (concluding that terms "must be given their ordinary meaning" where "[n]either the statute nor the Sentencing Guidelines define the terms 'mixture' and 'substance,' " and where they do not "have any established commonlaw meaning").[19]

---

so deficient that it would deprive a defendant of any ability to challenge the restraining order. In such a case, however, the hearing would not qualify as a predicate under the statute because the defendant would lack an "opportunity to participate" in the hearing.

[19]Along similar lines, Young argues that "notice" must be "meaningful" in order to comport with due process. *See In re Gault*, 387 U.S. 1, 33 (1967) ("Notice, to comply with due process requirements, must be given sufficiently in advance of scheduled court proceedings so that reasonable opportunity to prepare will be afforded, and it must set forth the alleged misconduct with particularity." (internal quotation omitted)). While this is correct, for the reasons given above it is also immaterial. Even if Young is correct that notice must be meaningful to comply with due process, that does not resolve what *the statute* requires for a predicate restraining order. The two issues are not coextensive. *See Lewis*, 445 U.S. at 65; *Hicks*, 389 F.3d at 535 ("[N]othing in the language of 18 U.S.C. § 922(g)(8) indicates that it applies only to persons subject to a *valid*, as opposed to an *invalid*, protective order.").

Further, only terms with "established commonlaw meaning[s]" should be interpreted in the light of those meanings. *Chapman*, 500 U.S. at 462; *see also*, *e.g.*, *Moskal*, 498 U.S. 103, 121—22 (1990). Due process notice "is not a technical conception with a fixed content unrelated to time, place and circumstance." *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895 (1961) (quotation omitted). Rather, "[t]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Id.* (citing *FCC v. WJR, Goodwill Station, Inc.*, 337 U.S. 265, 275—76 (1949)). Because "notice" lacks a fixed meaning in due process literature, the statutory term should be given its plain meaning.

The district court relied on the Seventh Circuit's decision in *Wilson*, 159 F.3d at 289, to conclude that "actual notice" requires "advance notice" sufficient to comport with due process. *Wilson*, however, discussed due process because the defendant there challenged the *state court hearing itself* as violating due process. *Id.* ("Wilson asserts that . . . the hearing he was given . . . did not meet the requirements of the Due Process Clause."). In contrast, our narrow focus is to divine Congressional intent by considering whether Young's predicate DVNC falls within the federal statutory text; Young, unlike Wilson, does not contend that the state court hearing violated due process. In short, *Wilson* did not address whether "actual notice"—*as the term exists in § 922(g)(8)(A)*—requires a due process hearing.[20]

We agree with Young that some other Circuits have applied this provision to defendants who were both informed of the hearing *and* knew that the hearing would involve the restraining order. *See*, *e.g.*, *Wilson*, 159 F.3d at 284 (noting that the emergency protective order set a date for a second hearing); *United States v. Banks*, 339 F.3d 267, 268 (5th Cir. 2003) (judge advised defendant that second hearing would discuss protective order).[21] But again, Young conflates two issues: Washington law *required* Judge Schwab to reissue the DVNC order at the December 8 arraignment, *see* Rev. Code Wash. 10.99.040(3), so it is very likely that Young *did* have notice

[20]As noted above, by entertaining a due process challenge to the state court proceedings, *Wilson* may be in tension with *Lewis*. *See supra* n.14.

[21]One sentence in a Ninth Circuit opinion gives some support to Young's view. In *Kafka*, the court stated that § 922(g)(8) required only that "[a]n individual charged under this statute must have received *actual notice of the restraining order hearing* and must have had an opportunity to participate in the hearing." 222 F.3d at 1130 (citing § 922(g)(8)) (emphasis added). However, this is simply a passing statement not "supported by reasoned analysis" and therefore has no precedential value. *United States v. Johnson*, 256 F.3d 895, 914 (9th Cir. 2001) (en banc) (Kozinski, J., concurring); *see also Miller v. Gammie*, 335 F.3d 889 (9th Cir. 2003) (en banc).

that the DVNC order would reissue at the December 8 hearing, just like the defendants did in *Wilson* and *Banks*. But that inquiry is irrelevant; the proper question is whether the evidence presented in federal court shows that Young's DVNC met § 922(g)(8)'s requirement that Young had notice of the fact of the hearing.

**[7]** A judgment of acquittal is improper if " '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Tisor*, 96 F.3d at 379 (quoting *Jackson*, 443 U.S. at 319). On December 6, the court appointed an attorney and told Young that he would be arraigned on December 8. Thus, Young had actual notice of the December 8 hearing at which the predicate DVNC was issued, and the judgment of acquittal on this ground was improper.[22]

3

Finally, Young argues that the term "opportunity to participate" requires actual participation sufficient to meet the requirements of due process. The government contends that the statute's plain meaning controls, and the defendant must have only an *opportunity* to participate.

The district court concluded that Young did not have an "opportunity to participate" in the December 8 hearing, noting that Young did not have an opportunity to consult with his attorney during the December 8 hearing; that Young was not

---

[22]Moreover, even if the statute did require advance notice of the content of the hearing, we still doubt that a judgment of acquittal would be proper. The jury heard evidence that Yakima County Superior Court judges *always* reconsider DVNC orders at an arraignment. The jury here could reasonably have inferred that Young and his attorney—who was surely aware that Judge Schwab would be required to reissue the DVNC order—discussed these matters between December 6 and December 8, thereby providing notice that a new restraining order would issue during the arraignment.

asked whether he wished to dispute the contents of the police report; that Young was not asked if he had evidence to present; and that Young was not asked if he objected to the issuance of the December 8 DVNC order. While the district court noted that none of these facts is dispositive, it concluded that "the judge's principal concern was whether Mr. Young understood he was bound by the order. While significant, the inquiry prompted by this concern did not satisfy § 922(g)(8)(A)."

**[8]** We disagree. From the plain text of the statute "actual participation" is not necessary; the statute requires only the mere "*opportunity* to participate." Other circuits—following the plain language of the statute—have reasoned that very little is required to satisfy the "opportunity to participate" prong. For example, in *Wilson* the Seventh Circuit found that the defendant—who represented himself *pro se*—had an opportunity to participate in the hearing. 159 F.3d at 284 ("Wilson was competent to lodge an objection to the protective order, and he was given the ability to do so."); *id.* at 290 ("An opportunity to respond is afforded when a party has 'the *opportunity* to present reasons, either in person or in writing, why proposed action should not be taken.' " (quoting *Loudermill*, 470 U.S. at 546) (emphasis added)). Similarly, in *Banks*, the defendant appeared in court and consented to an agreed temporary protective order.[23] 339 F.3d at 267, 268. The parties then informed the court that they had reached a settlement, so neither side presented witnesses or evidence and the presiding judge signed the temporary protective order outside the presence of the parties. *Id.* Yet the Fifth Circuit concluded that Banks had an opportunity to participate: "Banks had an opportunity to put on evidence, but he did not avail himself of that opportunity." *Id.* at 271.

---

[23]*Banks* also distinguished and limited the earlier case of *United States v. Spruill*, 292 F.3d 207 (5th Cir. 2002). In *Spruill*, the court decided that the § 922(g)(8) requirements were not met because Spruill "never appeared before a judge and no evidentiary hearing was held." *Banks*, 339 F.3d 270 (citing *Spruill*, 292 F.3d at 210-11).

**[9]** Joining the Fifth and Seventh Circuits, we agree that the plain text of the statute indicates that the "opportunity to participate" requirement is a minimal one. The prosecution must only show an opportunity to participate; that is, a proceeding during which the defendant *could* have objected to the entry of the order or otherwise engaged with the court as to the merits of the restraining order.

**[10]** Again, a judgment of acquittal is improper if " '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Tisor*, 96 F.3d at 379 (quoting *Jackson*, 443 U.S. at 319). Here, the jury was presented evidence sufficient to conclude that Young had an "opportunity to participate": Young was present when Judge Schwab issued the DVNC order and presented no evidence showing that he could not have further participated in the hearing; indeed, Young and Judge Schwab engaged in a lengthy dialogue, and at least once Young questioned Judge Schwab when he had a concern or required clarification. Indeed, by the end of the December 6 hearing, Young had counsel appointed who could have accompanied him on December 8th. Finally, Young and Judge Schwab had engaged in a lengthy colloquy during the December 6 hearing, again indicating that Young was capable of participating in the December 8 hearing to whatever extent he felt was necessary. That Young chose not to participate more fully is not relevant to understanding whether he had an "opportunity to participate." Thus, the judgment of acquittal on this ground was also improper.

### III

The government contends that the jury instructions were sufficient and that the district court's alternative holding granting the motion for a new trial on such grounds was erroneous.[24] Young argues that the district court properly concluded

---

[24]"In reviewing jury instructions, the relevant inquiry is whether the instructions as a whole are misleading or inadequate to guide the jury's

that the jury should have been instructed on the due process meanings of "hearing," "actual notice," and "opportunity to participate."

**[11]** Jury instructions need not define common terms that are readily understandable by the jury. *See United States v. Dixon*, 201 F.3d 1223, 1231 (9th Cir. 2000) (holding that "the court did not err by failing to define 'commercial advantage' and 'private financial gain' because these are common terms, whose meanings are within the comprehension of the average juror"); *United States v. Moore*, 921 F.2d 207, 210 (9th Cir. 1990) (holding that, "since 'violence' is a concept within the jury's ordinary experience, there is no prejudice in failing to define it"). Here, the jury instructions explained that a conviction under § 922(g)(8) requires finding beyond a reasonable doubt that, "at the time the defendant possessed the firearm, the defendant was subject to a court order dated December 8, 2004, that: (A) was issued after a *hearing of which such person received actual notice, and at which such person had an opportunity to participate*" (emphasis added).

**[12]** As discussed above, the terms "hearing," "actual notice," and "opportunity to participate," should be given their ordinary meaning, and therefore did not require further elaboration. The meaning of "hearing" is provided by the statute and was given a parallel definition in the jury instructions. Similarly, unless "actual notice" means something other than "actual notice"—such as "advance notice" or "meaningful notice"—then this term would also be apparent to a jury. Finally, the statutory term "opportunity to participate" requires only an opportunity to participate; the term has no

---

deliberation." *United States v. Frega*, 179 F.3d 793, 806 n.16 (9th Cir. 1999) (citing *United States v. Moore*, 109 F.3d 1456, 1465 (9th Cir. 1997) (en banc)). Whether a jury instruction properly states the elements of a statutory crime is a question of law reviewed de novo. *United States v. Phillips*, 367 F.3d 846, 854 (9th Cir.), *cert. denied*, 543 U.S. 980 (2004).

greater import than its plain meaning. We conclude that a jury instruction defining an "opportunity to participate" more specifically is unnecessary. *See Wilson*, 159 F.3d at 291; *id.* at 292 ("The terms 'hearing' and 'opportunity to participate' are not arcane legal terms that the general public does not understand, and we do not believe that any special attention had to be given to them in the jury instructions."). Thus, the jury instructions as to these terms were not "inadequate to guide the jury's deliberation." *Frega*, 179 F.3d at 806 n.16. Because the statutory requirements were properly presented to the jury, no new trial is necessary.

## IV

The judgment of the district court is REVERSED and this case is REMANDED for proceedings consistent with this opinion.