# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania State Police,      :
            Petitioner      :
            :
            v.             :      No. 711 C.D. 2023
            :
Chad M. Gress,      :
            Respondent      :      Argued: October 9, 2024

BEFORE:[1]   HONORABLE RENÉE COHN JUBELIRER, President Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE LORI A. DUMAS, Judge[2]
               HONORABLE STACY WALLACE, Judge
               HONORABLE MATTHEW S. WOLF, Judge

## OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE WOLF                      FILED: August 13, 2025

       The Pennsylvania State Police (PSP) petitions for review of the June 7, 2023 Order of an Administrative Law Judge within the Pennsylvania Attorney

---

[1] The en banc panel of judges that heard this case voted 4 to 3 in favor of affirming the ALJ's determination. However, in keeping with this Court's internal operating procedures, all commissioned judges voted on this opinion (including those who were not on the panel). This resulted in the voting judges being evenly split regarding the proper disposition of this matter; accordingly, this opinion is being filed "as circulated," pursuant to Section 256(b) of this Court's internal operating procedures, 210 Pa. Code § 69.256(b).

[2] This case was argued before a panel of the Court that included Judge Ceisler. Judge Ceisler's service with this Court ended on January 3, 2025, before the Court reached a decision in this matter. Accordingly, Judge Dumas was substituted for Judge Ceisler as a panel member in this matter and considered the matter as submitted on the briefs.

General's Office (ALJ) which granted Respondent Chad M. Gress's request for relief from PSP's determination that Gress is prohibited from possessing firearms due to entry of a temporary protection from abuse (PFA) order against him. This matter presents the following issue for this Court's review: whether the relevant PFA order was entered after a hearing, thus prohibiting Gress from possessing firearms under Section 922(g)(8) of the Federal Gun Control Act (FGCA), 18 U.S.C. § 922(g)(8). We conclude that the record before the ALJ did not show that the PFA order was entered after a hearing. Accordingly, we affirm the ALJ's determination.

Gress was the subject of a petition under the Protection from Abuse Act, 23 Pa.C.S. §§ 6101-6713 (PFA Act), in the Court of Common Pleas of the 39th Judicial District, Fulton County Division (trial court or PFA court). The trial court entered a temporary PFA order against Gress. As the PFA Act requires, Gress temporarily relinquished several of his firearms to the Fulton County Sheriff. *See* 23 Pa.C.S. § 6108(a)(7).

The trial court scheduled a hearing on issuance of a final PFA order for January 11, 2022. It is undisputed that Gress was served with notice of the time and place of that hearing. On the date of the scheduled hearing, the trial court entered a final PFA order with the agreement of the parties. *See* Reproduced Record (R.R.) at 52a-59a. The PFA order did not prohibit Gress from possessing firearms by its own terms. *Id.* Gress attempted to retrieve from the Fulton County Sheriff the firearms he had relinquished but was denied by PSP's background check system. The basis of that denial was Section 922(g)(8) of the FGCA, which prohibits a person from possessing a firearm in interstate commerce if that person is "subject to a court order that--

> (A) was issued *after a hearing* of which such person received actual notice, and at which such person had an

2

opportunity to participate;

(B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and

(C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or

(ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury . . . .

18 U.S.C. § 922(g)(8) (emphasis added).

Gress challenged the denial before PSP, as permitted under Section 6111.1 of the Pennsylvania Uniform Firearms Act of 1995 (UFA), 18 Pa.C.S. § 6111.1. PSP upheld the decision that he was disqualified from possession under Section 922(g)(8). Gress appealed to the Pennsylvania Attorney General and an ALJ held a *de novo* hearing on February 21, 2023, at which the burden of proof was on PSP. *See* 18 Pa.C.S. § 6111.1(e)(3) (right of appeal).

At the administrative hearing, PSP introduced a copy of Gress's administrative appeal and related correspondence as well as a copy of the PFA order. R.R. at 11a-12a. There was no testimony before the ALJ. The parties made the following stipulation at the administrative hearing:

[Counsel for PSP]: So, Your Honor, factual stipulations, the parties in this case will stipulate that there was a [PFA order] entered in Fulton County . . . against [] Gress that was entered after the scheduling of a hearing, but entered into by the parties upon agreement in lieu of an actual formal hearing.

3

[Counsel for Gress]: I agree.

[ALJ]: Do you agree with that? Anything to add to that?

[Counsel for Gress]: Yes, I do. No hearing took place in this except for ---

[Counsel for PSP]: We would agree to that, Your Honor, but we have no information that the order was imposed after full hearing but that it was upon agreement by the parties.

R.R. at 18a. The parties presented argument about the interpretation of the phrase "after a hearing" in Section 922(g)(8)(A) of the FGCA.

The ALJ granted Gress's administrative appeal. He concluded that "[PSP] has not proven by a preponderance of the evidence that [Gress] is prohibited from obtaining the return of his firearm under [Section 922(g)(8)]." The ALJ reasoned in relevant part as follows:

> [Section 922(g)(8)(A)] does **not** state that the firearm prohibition applies to a PFA[ order] "where notice of an evidentiary hearing and an opportunity to participate therein were provided." It states that the prohibition applies to a PFA[ order] that "**was issued after a hearing** of which such person received actual notice, and **at which** such person had an opportunity to participate." In this tribunal's view, the plain meaning and common sense interpretation of these words specifically chosen by the United States Congress is that if no evidentiary hearing was actually conducted prior to the court's entry of the protection from abuse order, a mandatory firearm disability does not apply.

ALJ's June 7, 2023 Order at 2 n.1 (emphasis in original) (citation omitted). PSP petitioned this Court for review.

4

On appeal,[3] PSP raises a single issue: whether the ALJ erred in concluding that the PFA order was not entered "after a hearing" for purposes of Section 922(g)(8)(A) of the FGCA. The parties agree that subsections 922(g)(B) and (C) are satisfied, so if the hearing requirement in subsection (A) is also satisfied, Gress would be disqualified from firearm possession under the FGCA.

PSP argues the ALJ erred by requiring that an evidentiary hearing occur to satisfy Section 922(g)(8)(A)'s hearing requirement. In PSP's view, all that is required for a hearing to occur is that the party be given notice of the proceeding and an opportunity to participate, whether or not he avails himself of that opportunity. PSP also asserts that the record reflects Gress was present at the scheduled PFA hearing, and cites in support the terms of the PFA order which states that Gress was given notice and an opportunity to be heard. PSP acknowledges that no Pennsylvania court has interpreted the FGCA's hearing requirement. It cites decisions of federal courts recognizing that "hearing" is undefined in the FGCA and holding that no particular hearing scope or duration is required to satisfy the hearing requirement.

Gress argues that the parties at the PFA proceeding agreed to a PFA order by consent prior to the scheduled hearing, and thus no hearing occurred, so Gress is not disqualified under Section 922(g)(8). Gress points out that if the PFA order had been entered "after a hearing," then under the FGCA Gress must be disqualified from possession by operation of federal law, and there is no discretion in the PFA court to undo that disqualification. By contrast, he argues, if as here the

---

[3] Our review is limited to determining whether "constitutional rights were violated, an error of law was committed, the procedure before the agency was contrary to statute, or any finding of fact made by the agency and necessary to support its adjudication is unsupported by substantial evidence." *Pa. State Police v. Doe*, 217 A.3d 455, 461 n.5 (Pa. Cmwlth. 2016).

PFA order was entered not after a hearing but instead by agreement, the PFA court may or may not disqualify him under state law. *See* 23 Pa.C.S. § 6108(a.1)(2); 18 U.S.C. § 922(g)(8). Gress claims that he intentionally agreed—before a hearing—to the PFA order, which by its own terms does not prohibit firearm possession, to avoid the mandatory disqualification under the FGCA.

The meaning of the phrase "after a hearing" as used in the FGCA is a question of interpretation and thus is a pure question of law. "After" is obvious but "hearing" requires construction. As used in another statute, the Pennsylvania Supreme Court has stated that "a hearing intends a judgment bench attended by judges or officials sitting in a judicial capacity, prepared to listen to both sides of the dispute and to consider deeply, reflect broadly, and decide impartially." *Commonwealth v. Davis,* 612 A.2d 426, 429 (Pa. 1992). On that basis, the court held that a tribunal's consideration of a written report did not constitute a hearing. *Id.*

No Pennsylvania court appears to have addressed the phrase in Section 922(g)(8)(A), so we turn to the federal courts for guidance in interpreting this federal statute.[4] They have held that what constitutes a hearing "is not ambiguous in this context" and refers to "a court proceeding," one requirement of which is that the subject party be given actual notice and the opportunity to participate. *United States v. Calor*, 340 F.3d 428, 431 (6th Cir. 2003); *accord United States v. Young*, 458 F.3d 998, 1009 (9th Cir. 2006); *United States v. Banks*, 339 F.3d 267, 270 (5th Cir. 2003). No "particular hearing scope or duration" is necessary to meet the hearing requirement. *United States v. Boyd*, 999 F.3d 171, 181 (3d Cir. 2021). "[T]he statute

---

[4] The decisions of inferior federal courts are of persuasive value. *In re Stevenson*, 40 A.3d 1212, 1221 (Pa. 2012).

does not require that evidence actually have been offered or witnesses called" for a hearing to occur. *United States v. Lippman,* 369 F.3d 1039, 1042 (8th Cir. 2004). But some court proceeding must occur. As the United States Court of Appeals for the Third Circuit has explained, the defendant "must have understood that he was permitted to interpose objections or make an argument" and that requires that the PFA court "engaged in [some] type of exchange with the defendant." *Boyd*, 999 F.3d at 181 (3d Cir. 2021) (quoting *United States v. Bramer*, 956 F.3d 91, 98 (2d Cir. 2020)).

Although the meaning of "after a hearing" is an interpretive question of law, whether the elements of that standard are met in any particular case depends on what occurred in the specific PFA proceeding. In other words, we need facts, shown by "the evidence in this case," to which we can apply the legal statutory requirement. *Boyd*, 999 F.3d at 182. Therefore, "the proper question is whether *the evidence presented . . . shows*" that the PFA order meets Section 922(g)(8)'s requirements. *Young*, 458 F.3d at 1009 (emphasis added).

For that reason, federal courts have closely analyzed the *evidence* of what occurred at the PFA proceeding when applying the "after a hearing" requirement. In *Bramer*, the United States Court of Appeals for the Second Circuit discussed what the record showed (and did not show) about the defendant's participation at the hearing. 956 F.3d at 99. The court emphasized that because there was no transcript of the hearing, all that was known was that the defendant was present at the hearing and agreed to the order. *Id.* at 97, 99. Even though the opposing party put on testimony regarding what occurred at the hearing, the Second Circuit found that testimony insufficient, holding that "[o]n the record before us we cannot conclude that Bramer was afforded [the] opportunity" that Section 922(g)(8)

7

requires. *Id.* at 99. In another case, an in-chambers discussion sufficed for the hearing requirement only because "testimony at trial revealed" that the trial judge and the defendant had engaged in a substantive colloquy regarding the defendant's intent to waive his right to an adversarial hearing. *United States v. Wilson*, 159 F.3d 280 (7th Cir. 1998). Courts "have found this low bar met when, for example, the defendant and the judge 'engaged in a lengthy dialogue,' *Young*, 458 F.3d at 1009, but have found it lacking when, for example, '[n]o evidence suggests that the court engaged in any type of exchange with [the defendant],' *Bramer*, 956 F.3d at 98." *Boyd*, 999 F.3d at 181-82.

Turning to this case, we have no record evidence of what occurred at the PFA proceeding other than a stipulation before the ALJ that no hearing took place. PSP introduced neither a transcript nor testimony about what occurred before the PFA court. *Cf. Bramer*, 956 F.3d at 97-99 (discussing testimony about PFA proceeding in absence of transcript). The entire extent of discussion on this issue before the ALJ was the joint stipulation that no hearing took place. *See* R.R. at 18a. PSP joined in that stipulation and did not object to the statement that "no hearing took place." *Id.* Thus, PSP appears to have been bound to a stipulation that no hearing took place. At oral argument before this Court, the parties made various representations regarding what did or did not occur before the PFA court. Those assertions of fact are outside of the record and we cannot rely on them. Pa.R.A.P. 1951(a); *Indem. Ins. Co. of N. Am. v. Bureau of Workers' Comp. Fee Rev. Hearing Off.*, 245 A.3d 1158, 1165 (Pa. Cmwlth. 2021) (en banc). Gress has never conceded that a hearing occurred and he continues to rely on PSP's stipulation.

It is clear which party should benefit from any gap in the evidence. The ALJ aptly noted that "[PSP] will have the burden of proof." R.R. at 8a; *see* 18

8

Pa.C.S. § 6111.1(e)(3) (placing burden on the Commonwealth). "In other words, . . . PSP must prove that the denial was legally and factually proper." *Pa. State Police v. Drake*, 304 A.3d 801, 807 (Pa. Cmwlth. 2023). PSP is familiar with that burden, under which it has made demanding factual showings in other cases. *Id.* at 809 (showing that particular firearm actually traveled in interstate commerce); *Navarro v. Pa. State Police*, 212 A.3d 26, 54 (Pa. 2019) (same); *Pa. State Police v. McPherson*, 831 A.2d 800, 805 (Pa. Cmwlth. 2003) (showing that elements of particular criminal offense were actually established). PSP must make these showings "[i]n order to prevail in [the] challenge." *McPherson*, 831 A.2d at 805. The consequence of failing to meet that burden is that PSP cannot prevail. *See Drake*, 304 A.3d at 809. Compared to those cases, it would have been easy for PSP to meet its burden here. It could have adduced a transcript of the PFA proceeding or testimony that Gress appeared and engaged in an exchange with the PFA court. Instead, PSP stipulated that no hearing took place.

What is more, documentary evidence of record cuts against the idea that the PFA order was entered after a hearing. The PFA order provides, in part:

> This order is entered by (check one) ☑ by agreement ☐ by agreement without an admission ☐ after a hearing and decision by the court ☐ after a hearing at which Defendant was not present, despite proper service being made ☐ by default. Without regard as to how the order was entered, this is a final order of court subject to full enforcement pursuant to the Protection From Abuse Act.

R.R. at 53a. The trial court selected "by agreement"; it did not select the other box for "*after a hearing* and decision by the court." (Emphasis added.) Perhaps consistent with that indication, the trial court also struck the portion of the form PFA order that would have expressly disqualified Gress from possessing firearms. *Id.* at 55a-56a. This portion was apparently initialed by the trial judge indicating his expectation as well as the concession of the Commonwealth. While the trial court's

9

opinion of whether a hearing occurred is not dispositive, it was, as discussed, PSP's burden to prove that point before the ALJ.

Given the lack of any evidence about what occurred at the PFA proceeding, the stipulation that no hearing occurred, and the documentary evidence consistent with that stipulation, we find no error in the ALJ's determination that no hearing took place. On this record, it is difficult to see how the ALJ could have reached any other conclusion. We do not opine further on the precise legal contours of Section 922(g)(8)(A) because doing so is unnecessary to resolve this case, where the record is obviously insufficient for us to apply that standard in detail. Saying more might upset settled expectations in Pennsylvania around the consequences of negotiating a PFA order by agreement before a hearing versus proceeding with the hearing. The latter would have resulted in Gress's disqualification under the FGCA. Gress argues he relied on that distinction in his negotiation in the trial court. Instead, we will affirm, allowing Gress to prevail, because PSP bore the burden of proof below and failed to meet it.

Thus, although our rationale differs slightly from that of the ALJ, we affirm the ALJ's determination.

_____
MATTHEW S. WOLF, Judge

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Pennsylvania State Police, :
                    Petitioner :
                     :
        v. : No. 711 C.D. 2023
                     :
Chad M. Gress, :
                    Respondent :

**O R D E R**

AND NOW, this 13th day of August, 2025, the order of the Administrative Law Judge of the Pennsylvania Office of Attorney General dated June 7, 2023, is AFFIRMED.

_____
MATTHEW S. WOLF, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania State Police,      :
            Petitioner      :
                          :
        v.                 :    No. 711 C.D. 2023
                          :    Argued: October 9, 2024
Chad M. Gress,             :
            Respondent    :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE LORI A. DUMAS, Judge
                HONORABLE STACY WALLACE, Judge
                HONORABLE MATTHEW S. WOLF, Judge

OPINION NOT REPORTED

DISSENTING OPINION BY
PRESIDENT JUDGE COHN JUBELIRER       FILED: August 13, 2025

The purpose of the Pennsylvania Protection from Abuse (PFA) Act[1] "is self-evident—to protect PFA plaintiffs from abuse." *Commonwealth v. Stevenson*, 283 A.3d 196, 204 (Pa. 2022). And "advance prevention of physical and sexual abuse" is the "primary goal" of the PFA Act. *Bhatia v. Fernandez*, 319 A.3d 517, 520 (Pa. Super. 2024).[2] By maintaining the "settled expectation" that a perpetrator of domestic abuse may negotiate around federal firearm prohibitions simply by

---

[1] 23 Pa.C.S. §§ 6101-6122.

[2] "In general, Superior Court decisions are not binding on this Court, but they offer persuasive precedent where they address analogous issues." *Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018) (citation omitted).

agreeing to the entry of a final PFA order, the Majority does not uphold the object and primary goal of the PFA Act. Therefore, I respectfully dissent.

## I.

In alignment with the object and primary goal of the PFA Act, firearm prohibitions have been used since our Nation's founding to "prevent[] individuals who threaten physical harm to others from misusing firearms." *United States v. Rahimi*, 602 U.S. 680, 690 (2024). Firearm prohibitons are crucial and life-saving for victims of domestic abuse, as research indicates that the presence of firearms not only increases the coercive control central to abuse but exponentially increases the risk of fatal abuse. *See* Joseph Blocher & Reva B. Siegel, *When Guns Threaten the Public Sphere: A New Account of Public Safety Regulation Under Heller*, 116 Nw. U. L. Rev. 139, 191-92 & n.273 (2021). In Pennsylvania for example, in 2023 alone, 77% of victim fatalities caused by domestic abuse involved firearms. *See* Pa. Coal. Against Domestic Violence, Domestic Violence Fatality Report 2023, at 6-7 (2023). Section 922(g)(8) of the Federal Gun Control Act (FGCA)[3] "fits comfortably within this tradition" of protecting victims of abuse from the misuse of firearms by their abusers. *Rahimi*, 602 U.S. at 690.

## A.

Section 922(g)(8) of the FGCA places specific firearm prohibitions upon persons subject to certain court orders that were "issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate." 18 U.S.C. § 922(g)(8). On January 11, 2022, after providing Chad M. Gress with actual notice and an opportunity to be heard at a scheduled hearing, the Court of Common Pleas of the 39th Judicial District, Fulton County branch (PFA

---

[3] 18 U.S.C. § 922(g)(8).

court), entered a final PFA order against Gress pursuant to Section 6108 of the PFA Act, 23 Pa.C.S. § 6108, which did not contain firearm prohibitions.[4]  (Reproduced Record (R.R.) at 52a-59a.)   The PFA court entered the final PFA order "by agreement" between Gress and the PFA plaintiff without holding an evidentiary hearing.  (*Id.* at 18a, 53a.)  Subsequently, an Administrative Law Judge (ALJ) of the Pennsylvania Office of Attorney General ordered the Pennsylvania State Police (PSP) to return a relinquished firearm to Gress because the final PFA order did not trigger the firearm prohibitions of § 922(g)(8) as the PFA court did not issue the order "after a hearing" in accordance with § 922(g)(8)(A).[5]

The ALJ viewed this provision as requiring an **evidentiary** hearing at which either documentary evidence is in fact received or sworn testimony is in fact taken before the firearm prohibitions are imposed.  This is error, as **none** of the federal circuit courts that have interpreted this federal statutory provision have required **either** evidence or testimony to be taken for the proceeding to meet the requirements of § 922(g)(8)(A).   Instead, so long as the person subject to a protection order received actual notice of and had the opportunity to participate in a hearing on the order, the person is subject to the firearm prohibitions of § 922(g)(8) regardless of whether the order was entered after an evidentiary hearing or by agreement.  *See United States v. Banks*, 339 F.3d 267, 270-72 (5th Cir. 2003).

---

[4] On January 11, 2025, the final PFA order expired in accordance with its terms and Section 6108(d) of the PFA Act, 23 Pa.C.S. § 6108(d) ("A protection order or approved consent agreement shall be for a fixed period of time not to exceed three years.").  Although this matter therefore appears moot, I believe this issue meets an established exception to the mootness doctrine because "it raises important public policy questions which may otherwise escape review."  *Custer v. Cochran*, 933 A.2d 1050, 1053 n.3 (Pa. Super. 2007) (concluding an issue involving a PFA order met an exception to the mootness doctrine); *see also Snyder v. Snyder*, 629 A.2d 977, 980 n.1 (Pa. Super. 1993) (holding the same, explaining that "[PFA] [o]rders are usually temporary, and it is seldom that we have the opportunity to review one before it expires").

[5] It is undisputed that the final PFA order satisfies § 922(g)(8)(B) and (C).

Although the term "hearing" can be used to refer to different proceedings in different contexts under both federal and Pennsylvania law, such as a proceeding at which documentary evidence is received or testimony is taken, "the term is **not ambiguous** in this context." *See United States v. Calor*, 340 F.3d 428, 431 (6th Cir. 2003) (emphasis added).[6] The United States Courts of Appeals have consistently concluded that, "for the purposes of [§ 922(g)(8)(A)], a hearing simply is **a proceeding** of which the defendant has '**actual notice**' and an '**opportunity to participate**.'" *United States v. Young*, 458 F.3d 998, 1005-06 (9th Cir. 2006) (emphasis added); *accord Calor*, 340 F.3d at 431 ("[F]or a court proceeding to be the predicate hearing for a court order that triggers the § 922(g)(8) firearm disability, the statute straightforwardly requires that the subject of the court order be given actual notice of the proceeding and an opportunity to participate."). Logically, to facilitate the opportunity to participate, the court must schedule the proceeding for a particular time and place, and a judge must sit on the bench at the proceeding "prepared to listen to both sides of the dispute and to consider deeply, reflect broadly, and decide impartially." *See Banks*, 339 F.3d at 270-71 (citation omitted); *see also Commonwealth v. Davis*, 612 A.2d 426, 429 (Pa. 1992) ("[A] hearing intends a judgment bench attended by judges or officials sitting in a judicial capacity, prepared to listen to both sides of the dispute and to consider deeply, reflect broadly, and decide impartially, and the mere consideration of a report moving across one's desk, is not a hearing."). Simply put, a review of case law reveals that a "hearing" as contemplated by § 922(g)(8)(A) is a proceeding scheduled for a particular time and place, of which the person subject to the protective order has actual notice, at which the judge sits on the bench prepared to consider and decide the dispute, and at which

---

[6] "[T]he pronouncements of the lower federal courts have only persuasive, not binding, effect on the courts of this Commonwealth . . . ." *In re Stevenson*, 40 A.3d 1212, 1221 (Pa. 2012).

the person has an opportunity to participate. *See Banks*, 339 F.3d at 270-71; *Calor*, 340 F.3d at 431; *Young*, 458 F.3d at 1005-06; *see also Davis*, 612 A.2d at 429.

"Section 922(g)(8) does not require," however, "a particular hearing scope or duration." *United States v. Boyd*, 999 F.3d 171, 181 (3d Cir. 2021). And "the statute does not require that evidence actually have been offered or witnesses called." *United States v. Lippman*, 369 F.3d 1039, 1042 (8th Cir. 2004). For example, in *Banks*, the United States Court of Appeals for the Fifth Circuit considered whether a hearing occurred as contemplated by § 922(g)(8)(A) where a court issued a protective order after a proceeding in which the parties merely informed the court that they **reached an agreement** to settle the dispute and, thus, **did not call witnesses nor present evidence** other than the agreed-to protective order. 339 F.3d at 268. The defendant was later criminally charged with violating § 922(g)(8); however, the district court dismissed the charges, finding the protective order was not issued after a hearing as required by § 922(g)(8). *Id.* at 269. On appeal, the Fifth Circuit reversed, concluding:

> [The defendant] had "actual notice" and "an opportunity to participate," as . . . § 922(g)(8)(A) requires, and **the only reason that evidence** . . . **was not introduced is because [the defendant] consented to the agreed protective order**. . . . [The defendant], his attorney, the Assistant District Attorney, and perhaps [the victim] **appeared in court** on the scheduled date for the hearing. The presiding **judge** . . . **sat on the bench**, ready for the hearing; the evidence indicates that he was "prepared to listen to both sides of the dispute and to consider deeply, reflect broadly, and decide impartially." [*United States v. Spruill*, 292 F.3d 207, 220 (5th Cir. 2002)] (quoting . . . *Davis*, . . . 612 A.2d [at] 429 . . . ). [The defendant] had an **opportunity to put on evidence, but he did not avail himself of that opportunity**. Though neither the Assistant District Attorney nor defense counsel put on live testimony, there was evidence before the court supporting issuance of the protective order, in the form of [the victim's] statement of abuse. . . . As *Spruill* requires, the hearing in this case was "set for a particular time and place and the defendant . . . received notice of that and

> thereafter the hearing [was] held at that time and place." *Id.* [The defendant] thus received a "hearing."

*Id.* at 270-71 (emphasis added). Further concerned about creating a loophole around the firearm prohibitions in § 922(g)(8), the Fifth Circuit also reasoned that if it "[w]ere [] to hold that an agreed order could never be the basis for a § 922(g)(8) prosecution, a defendant with all the protections that the statute contemplates **could simply consent to an agreed order to escape a later federal prosecution**." *Id.* at 272 (emphasis added). The Fifth Circuit refused to create such a loophole, concluding a hearing occurred as contemplated by § 922(g)(8)(A). *Id.*

Like in *Banks*, the United States Court of Appeals for the Sixth Circuit in *Calor* examined whether a hearing under § 922(g)(8)(A) occurred where a court issued a protective order after a proceeding in which there was **no sworn testimony** from witnesses, **nor any other evidence** presented to the court. *Calor*, 340 F.3d at 429. As in this case, the defendant argued no hearing occurred. *Id.* at 430. The Sixth Circuit disagreed, concluding first that "the actual notice requirement [was] satisfied by the summons written into the [protective order] that was served on [the defendant]." *Id.* at 431. Second, "[t]he opportunity to participate requirement [was] satisfied because [the defendant] **could** have presented reasons why the court should not enter an order . . . at the . . . court proceeding." *Id.* (emphasis added). "That [the defendant] elected to **waive his opportunity** to participate," the Sixth Circuit explained, "does **not alter** his status under § 922(g)(8)." *Id.* (emphasis added); *see also Young*, 458 F.3d at 1009 (concluding the defendant had an opportunity to participate in a hearing because "the defendant **could** have objected to the entry of the order or otherwise engaged with the court as to the merits of the restraining order") (emphasis added).

Of course, the person subject to the protective order must have an **opportunity** to participate in the proceeding to satisfy § 922(g)(8)(A). In *United States v. Bramer*, for instance, the United States Court of Appeals for the Second Circuit concluded that a proceeding at which the court did not engage "in any type of exchange" with the pro se defendant before issuing a protective order did not satisfy the hearing requirement of § 922(g)(8)(A) because the defendant did not have an opportunity to participate in the proceeding. 956 F.3d 91, 98-99 (2d Cir. 2020). Although it agreed with its sister circuits that the opportunity to participate requirement is "a minimal one," the Second Circuit explained the requirement is met for unrepresented defendants when "a reasonable person in [the defendant's] position would have understood that he was permitted to interpose objections or make an argument as to why an order of protection should not be imposed." *Id.* at 98. "Where counsel is present on behalf of the defendant," however, the Second Circuit explained that "absent a direct order from the court prohibiting him or her from speaking, **counsel would understand** that attorneys do not need an explicit invitation to object or speak on behalf of their clients." *Id.* (emphasis added). In light of the defendant's pro se status, the Second Circuit concluded the defendant did not have an opportunity to participate in the proceeding because the defendant did not agree or object to the protective order and the court did not provide the defendant with an opportunity to do so. *Id.* at 97-98; *see also United States v. Kaspereit*, 994 F.3d 1202, 1211 (10th Cir. 2021) ("[A]t minimum, 'opportunity to participate' means the defendant must have been present at a hearing on the protective order either in person or by counsel and have had an opportunity to object to the entry of, or otherwise engage with the court on the merits of, the order.").

Albeit in a different context, the Pennsylvania Supreme Court's definition of "hearing" is consistent with the term "hearing" as used in § 922(g)(8)(A). In *Davis*, the Pennsylvania Supreme Court examined whether a hearing occurred as required by Section 9727(a) of the Sentencing Code, 42 Pa.C.S. § 9727(a), where a court at a resentencing proceeding did not take evidence as to the defendant's mental health but rather incorporated into the record a mental health evaluation from an earlier federal proceeding involving the defendant. 612 A.2d at 428. The Supreme Court concluded in the negative, explaining that "a hearing intends a judgment bench attended by judges or officials sitting in a judicial capacity, prepared to listen to both sides of the dispute and to consider deeply, reflect broadly, and decide impartially, and the mere consideration of a report moving across one's desk, is not a hearing." *Id.* at 429 (citation omitted). Consistent with federal case law interpreting § 922(g)(8) of the FGCA, the Supreme Court explained the resentencing proceeding did not satisfy the hearing requirement of Section 9727(a) of the Sentencing Code because the court did not provide the parties an opportunity to present evidence; rather, it merely adopted a different court's previous evaluation of the defendant. *Compare id.* ("It was not a *hearing*, at which each side **could** present evidence . . . .") (bold emphasis added), *with Calor*, 340 F.3d at 431 ("The opportunity to participate requirement is satisfied because [the defendant] **could** have presented reasons why the court should not enter a[] [protective] order . . . at the . . . court proceeding.") (emphasis added), *and Young*, 458 F.3d at 1009 ("[Section 922(g)(8)(A) requires] a proceeding during which the defendant **could** have objected to the entry of the order or otherwise engaged with the court as to the merits of the restraining order.") (emphasis added); *see also Banks*, 339 F.3d at 270-271 (noting the Fifth Circuit has approvingly cited *Davis* in interpretating "hearing" under § 922(g)(8)(A)).

Here, based on the foregoing federal case law, which is persuasive in interpreting a federal statute, the ALJ erred as a matter of law in concluding that an **evidentiary** hearing, at which either testimony is taken or evidence presented, is required to satisfy the hearing requirement of § 922(g)(8)(A). As stated above, "[§] 922(g)(8) does not require . . . a particular hearing scope or duration," *Boyd*, 999 F.3d at 181, and "the statute does not require that evidence actually have been offered or witnesses called," *Lippman*, 369 F.3d at 1042. Simply, a hearing as contemplated by § 922(g)(8)(A) will be found to have occurred if there was a proceeding scheduled for a particular time and place, of which the defendant received actual notice, at which the record indicates the trial court sat on the bench prepared to consider and decide the PFA dispute, and at which the defendant had an opportunity to participate. *See Banks*, 339 F.3d at 270-71; *Calor*, 340 F.3d at 431; *Young*, 458 F.3d at 1005-06; *Davis*, 612 A.2d at 429. Based on the record evidence and the parties' representations to the Court, the PFA court entered the final PFA order against Gress "after a hearing of which such person received actual notice, and at which such person had an opportunity to participate." 18 U.S.C. § 922(g)(8)(A).

To start, it is undisputed that the PFA court scheduled a proceeding on the final PFA order for January 11, 2022. (R.R. at 18a, 50a.) It is also undisputed that Gress received actual notice of the scheduled proceeding. (*Id.* at 52a-53a (finding in the final PFA order that Gress "[h]ad been provided with reasonable notice" because he "was served in accordance with [Pennsylvania Rule of Civil Procedure] 1930.4 and provided notice of the time, date, and location of the hearing scheduled in this matter").) Nothing more was required to satisfy these elements. *See Banks*, 339 F.3d at 270; *Calor*, 340 F.3d at 429; *Young*, 458 F.3d at 1007.

Additionally, the PFA court explicitly found in the final PFA order that Gress had the "opportunity to be heard" before the court entered the order, which Gress does not dispute. (*Id.* at 52a.) Such a finding indicates that the PFA court held the scheduled proceeding, the judge sat on the bench prepared to consider and decide the dispute, and Gress had an opportunity to participate in the proceeding. *See Lippman*, 369 F.3d at 1042 ("A hearing [under § 922(g)(8)(A)] requires actual notice and an **opportunity to be heard**, but the statute does not require that evidence actually have been offered or witnesses called.") (emphasis added). Moreover, Gress—who was represented by counsel—would have understood that he was permitted to engage with the PFA court during the proceeding. *See Bramer*, 956 F.3d at 98. Indeed, this record evidence is buttressed by the representations of Gress's counsel to this Court during oral argument, at which counsel explained that Gress and the PFA plaintiff appeared before the PFA court for the scheduled proceeding and engaged in an exchange with the court regarding the final PFA order. *See* Oral Argument at 1:45:36-1:46:09, 1:50:54-1:51:10, *Pa. State Police v. Gress* (Pa. Cmwlth., No. 711 C.D. 2023, filed August 13, 2025), https://pcntv.com/pennsylvania-politics-and-policy/pa-courts/pa-commonwealth-court/ (last visited August 13, 2025) (select thumbnail for "PA Commonwealth Court En Banc Session 2024-10-09").[7] Thus, the record evidence indicates, and the

---

[7] At oral argument before this Court, en banc, Gress's counsel explained what occurred at the proceeding on January 11, 2022, to which there was no disagreement. Gress's counsel explained that on the date of the proceeding, Gress, with his counsel, and the unrepresented PFA plaintiff appeared before the trial court. Oral Argument at 1:45:36-1:46:09, 1:50:54-1:51:10. At the start of the proceeding, the PFA court requested that the PFA parties attempt to settle the dispute. *Id.* While at the courthouse and with the assistance of Gress's counsel, the PFA parties reached a settlement agreement, which did not include firearm prohibitions. *Id.* Subsequently, the PFA parties reentered the courtroom and, on the record, informed the PFA court that they reached a settlement. *Id.* The PFA parties neither called witnesses nor presented any other evidence, **(Footnote continued on next page…)**

representations to this Court support, that the PFA court entered the final PFA order after a hearing as the term is used in § 922(g)(8)(A). That Gress elected to waive an evidentiary hearing by agreeing to the entry of the final PFA order "does not alter his status under § 922(g)(8)." *See Calor*, 340 F.3d at 431; *see also Banks*, 339 F.3d at 270-71.

I cannot agree with the Majority's conclusion that the record evidence does not support that the PFA court issued the final PFA order after a hearing. First, PSP and Gress stipulated that the PFA court entered the final PFA order "upon agreement in lieu of an actual formal hearing." (R.R. at 18a.) As discussed above, an "actual formal hearing" is not required to satisfy the "after a hearing" requirement of § 922(g)(8)(A). *See Boyd*, 999 F.3d at 181; *Lippman*, 369 F.3d at 1042. Second, it is of no moment that the PFA court entered the final PFA order "by agreement" instead of "after a hearing and decision by the court," as a protection order may satisfy § 922(g)(8)(A) despite the court entering the order upon agreement between the parties in lieu of a full hearing. *See Banks*, 339 F.3d at 270-71. That the PFA court or Gress may have understood differently does not alter the settled requirements of § 922(g)(8)(A).

**B.**

It is also troubling that the Majority maintains the "settled expectations in Pennsylvania around the consequences of negotiating a PFA order by agreement before a hearing versus proceeding with the hearing." *Gress*, slip op. at 10. In so doing, the Majority maintains the apparent expectation that a PFA defendant may

---

except for the settlement agreement, at the proceeding. *Id.* Based upon the PFA parties' representations during the proceeding, the PFA court entered the final PFA order, by agreement, against Gress without firearm prohibitions. *Id.* Although Gress's counsel informed this Court that a transcript of the January 11, 2022 proceeding was created, neither Gress nor PSP provided it to the ALJ or this Court. *Id.*

negotiate around the firearm prohibitions of § 922(g)(8) by merely agreeing to the entry of a final PFA order. (*See* Gress's Brief (Br.) at 5.) However, if the requirements of § 922(g)(8) are satisfied, PFA defendants **cannot negotiate** around the firearm prohibitions contained therein. *See Rahimi*, 602 U.S. at 748 (Thomas, J., dissenting) ("If those three characteristics [of § 922(g)(8)] are present, § 922(g)(8) **automatically** bans the individual subject to the order from possessing 'any firearm or ammunition.'") (emphasis added). Like the Fifth Circuit in *Banks*, therefore, the Court should not maintain the apparent expectation that a PFA defendant may bargain around the consequences of § 922(g)(8) when the requirements therein are satisfied by simply agreeing to the entry of a protection order. *See* 339 F.3d at 272; *see also United States v. Coccia*, 249 F. Supp. 2d 79, 82 (D. Mass. 2003) ("By requiring a hearing and an opportunity to be heard, these provisions [of § 922(g)(8)] satisfy due process, and also prevent a potential defendant from dodging future criminal liability merely by ducking an appearance at an important civil hearing.").

Moreover, it is important not to maintain this apparent expectation given the unequal bargaining power that generally exists between victims of abuse and their abusers in protection proceedings, which is exacerbated when, as is the case here, the PFA plaintiff is pro se while the defendant is represented by counsel. *See* Peter Johnson & Elia Robertson, *Protecting, Restoring, Improving: Incorporating Therapeutic Jurisprudence and Restorative Justice Concepts into Civil Domestic Violence Cases*, 164 U. PA. L. REV. 1557, 1567, 1579, 1584-85 (2016) (examining a solution to alleviate unequitable bargaining dynamics between victims and their abusers in agreed-to protective orders under the Pennsylvania PFA Act); *see also* Beverly Balos, *Domestic Violence Matters: The Case for Appointed Counsel in*

*Protective Order Proceedings*, 15 Temp. Pol. & C.R. L. Rev. 557 (2006) (advocating for the appointment of counsel in protection proceedings for pro se victims of domestic abuse because of the unequal power dynamic between victims and their abusers). Especially considering the exponential increase in the risk of death when firearms are involved in abuse, I cannot condone perpetrators of abuse exploiting this imbalance in bargaining power to negotiate around federal firearm prohibitions when the legal criteria for such prohibitions are satisfied.

## II.

In light of the Majority's concerns regarding the upsetting of expectations in agreed-to PFA orders, I believe it is also prudent to address Gress's arguments regarding a PFA court's discretion to not impose firearm prohibitions.

Gress maintains that if the Court were to conclude that § 922(g)(8) of the FGCA may be satisfied when a final PFA order is entered by agreement in lieu of an evidentiary proceeding, the Court would upset the expectation that a PFA court has the discretion to not impose firearm prohibitions on a PFA defendant when the defendant agrees to the entry of a PFA order. Gress maintains that firearm prohibitions act as a "bargaining chip" in PFA settlement negotiations, and in the instant case, Gress agreed to the final PFA order in exchange for retaining his firearms. (Gress's Br. at 5.) According to Gress, Section 6108(a.1)(2) of the PFA Act, 23 Pa.C.S. § 6108(a.1)(2), and Section 6105(c)(6) of the Pennsylvania Uniform Firearm Act of 1995 (PUFA), 18 Pa.C.S. § 6105(c)(6), authorize a PFA court to alleviate a PFA defendant from firearm prohibitions, including those contained in § 922(g)(8) of the FGCA. The plain language of each statute belies such a claim.

First, Section 6108(a.1)(2) of the PFA Act only grants a PFA court the discretion not to impose the state firearm prohibitions contained in Section 6108(7)

of the PFA Act; it does **not** grant a PFA court the authority to relieve a PFA defendant from any other firearm prohibitions, including the federal firearm prohibitions in § 922(g)(8) of the FGCA. Under Section 6108(a) of the PFA Act, a court may grant a PFA order either by order or by agreement. 23 Pa.C.S. § 6108(a). If a court grants a final PFA order by order, the final PFA order must contain the firearm prohibition contained in Section 6108(a)(7) of the PFA Act. *Id.* § 6108(a.1)(1). However, if a court grants a final PFA order by agreement, "[the] final agreement . . . may order that the defendant is subject to the firearms, other weapons or ammunition and firearms license prohibition and relinquishment provisions **under subsection (a)(7)**." *Id.* § 6108(a.1)(2) (emphasis added). Therefore, Section 6108(a.1)(2) of the PFA Act does not grant a PFA court the authority to relieve a PFA defendant from any statutory firearm prohibition, such as those contained in § 922(g)(8) of the FGCA; rather, it merely provides the court limited discretion not to impose the firearm prohibitions contained in Section 6108(a)(7) of the PFA Act. *Id.* § 6108(a.1)(2); *see also id.* § 6108(i)(3) ("If the court orders the return of a firearm under this section, prior to the return of the firearm, the sheriff shall independently confirm that the person seeking relief under this section is legally eligible to possess firearms under Federal and State law.").

Second, Section 6105(c)(6) of the PUFA only grants a PFA court the discretion to remove the state firearm prohibitions contained in Section 6105(a) of the PUFA; it does **not** grant a PFA court the discretion to remove any other firearm prohibitions, including the federal prohibitions contained in § 922(g)(8) of the FGCA. Under Section 6105(c)(6) of the PUFA,

> In addition to any person who has been convicted of any offense listed under subsection (b), the following persons shall be subject to the **[firearm] prohibition of subsection (a)**:

. . . .

(6) A person who is the subject of an active final [PFA] order issued pursuant to 23 Pa.C.S. § 6108, is the subject of any other active [PFA] order issued pursuant to 23 Pa.C.S. § 6107(b) [(relating to temporary PFA orders)], which provided for the relinquishment of firearms during the period of time the order is in effect or is otherwise prohibited from possessing or acquiring a firearm under 18 U.S.C. § 922(g)(8). This prohibition shall terminate upon the expiration or vacation of the order or portion thereof relating to the relinquishment of firearms.

18 Pa.C.S. § 6105(c)(6) (emphasis added). Gress relies on the final sentence of Section 6105(c)(6) to argue that a PFA court has the authority to relieve PFA defendants from all firearm prohibitions by vacating that portion of a final PFA order. Gress, however, misapplies the plain language of the statute. Section 6105(c)(6) merely allows a PFA court to relieve a PFA defendant from the firearm prohibition contained in Section 6105(a) of the PUFA. Section 6105(c)(6) does not grant a PFA court the authority to relieve a PFA defendant from any other firearm prohibitions, including those contained in § 922(g)(8) of the FGCA. *See id.* § 6105(g) ("**Nothing** in this section shall exempt a person from a disability in relation to the possession or control of a firearm . . . **which is imposed pursuant to the provision of any law other than this section**.") (emphasis added); *Pa. State Police v. Paulshock*, 836 A.2d 110, 115 (Pa. 2003) (holding the only relief a court may grant under Section 6105 of the PUFA is from the **state** firearm prohibition contained in Section 6105(a); thus, a court **cannot** effectuate the removal of **federal** firearm prohibitions under this statute).

Therefore, while a PFA court may relieve a PFA defendant from specific **state** firearm prohibitions, Section 6108(a.1)(2) of the PFA Act and Section 6105(C)(6) of the PUFA do **not** grant the PFA court the authority to relieve the defendant from

any other statutory firearm prohibitions, including those contained in § 922(g)(8) of the FGCA. Any other interpretation would not only contradict the plain language of these statutes but also the explicit language of the final PFA order, which notified Gress that "[i]f you possess a firearm or any ammunition while this order is in effect, you may be charged with a federal criminal offense **even if this Pennsylvania order does not expressly prohibit you from possessing firearms or ammunition under 18 U.S.C. § 922(g)(8)**." (R.R. at 52a, 58a.) Thus, so long as a person subject to a PFA order meets the requirements of § 922(g)(8), the firearm prohibitions contained therein are imposed, **regardless** of whether the court entered the PFA order by order or agreement or vacated the portion of the order regarding firearm prohibitions. *See Rahimi*, 602 U.S. at 748 (Thomas, J., dissenting). To the extent the Majority's opinion may be read to permit a PFA court, pursuant to Section 6108(a.1)(2) of the PFA Act or Section 6105(c)(6) of the PUFA, to relieve a PFA defendant from the federal firearm prohibitions of § 922(g)(8), I must dissent.

\* \* \*

The PFA Act is designed to protect victims from abuse and prevent future abuse. Firearm prohibitions further the object and primary goal of the PFA Act by protecting victims of abuse from the coercive effect of firearms and preventing victims from facing the exponential increase in the risk of death when firearms are involved in abuse. In concluding the PFA court did not issue the final PFA order against Gress after a hearing and maintaining the apparent expectation that a PFA defendant may negotiate around federal firearm prohibitions, the Majority does a disservice not only to the text and purpose of the PFA Act but, more importantly, to future victims of domestic abuse.

For these reasons, I respectfully dissent.

_____

RENÉE COHN JUBELIRER, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania State Police,           :
                          Petitioner  :
                                      :
         v.                           :
                                      :
Chad M. Gress,                        :    No. 711 C.D. 2023
                        Respondent    :    Argued: October 9, 2024


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE LORI A. DUMAS, Judge
           HONORABLE STACY WALLACE, Judge
           HONORABLE MATTHEW S. WOLF, Judge


OPINION NOT REPORTED

DISSENTING OPINION
BY JUDGE FIZZANO CANNON                        FILED: August 13, 2025


         I respectfully dissent.  I agree with the conclusion of President Judge

Cohn Jubelirer's dissent that the hearing requirement in order for the resulting

protection from abuse (PFA) order to give rise to a federal firearms restriction is

satisfied not only by a full evidentiary hearing, but also by a consent order entered

in lieu of the presentation of evidence at the time and place of a scheduled hearing.

I write separately because, in the circumstances of this case, the appeal before this

Court has become moot, such that the appeal should be dismissed.

         "[A] case is moot if there is no actual case or controversy in existence

at all stages of the controversy." *Phila. Pub. Sch. Notebook v. Sch. Dist. of Phila.*,

49 A.3d 445, 448 (Pa. Cmwlth. 2012) (citing *Pap's A.M. v. City of Erie*, 812 A.2d

591, 599 (Pa. 2002)); *see also Phila. Pub. Sch. Notebook*, 49 A.3d at 448 (explaining that "[a] controversy must continue through all stages of judicial proceedings, trial and appellate, and the parties must continue to have a personal stake in the outcome of the lawsuit. Courts will not enter judgments or decrees to which no effect can be given") (quoting *Mistich v. Pa. Bd. of Prob. & Parole*, 863 A.2d 116, 119 (Pa. Cmwlth. 2004) (additional quotation marks omitted)). "An issue can become moot during the pendency of an appeal due to an intervening change in the facts of the case or due to an intervening change in the applicable law." *In re Cain*, 590 A.2d 291, 292 (Pa. 1991); *see also Phila. Pub. Sch. Notebook*, 49 A.3d at 448 (explaining that "[m]ootness problems arise in cases involving litigants who clearly had one or more justiciable matters at the outset of the litigation, but events or changes in the facts or the law occur which allegedly deprive the litigant of the necessary stake in the outcome after the suit is underway").

Here, the PFA order, and consequently the resulting federal firearms restriction, expired in January 2025. Moreover, no party has since filed any application with this Court to supplement the record based on any averment that the original PFA order has been extended for any reason. Respondent, therefore, became entitled to the return of his firearms by operation of law upon the expiration of the PFA order. Because Respondent is currently entitled to recover his firearms, this Court cannot grant relief that will have any effect. *Accord Consol. Pa. Coal Co. v. Dep't of Env't Prot.*, 129 A.3d 28, 40 (Pa. Cmwlth. 2015) (explaining that upon compliance with an order and the order's subsequent withdrawal, the order no longer exists, and no meaningful relief can be provided regarding it). Accordingly, the appeal is moot.

A narrow exception to the mootness doctrine exists, although a case is otherwise moot, "where the conduct complained of is capable of repetition yet likely to evade review . . . ." *Consol. Pa. Coal*, 129 A.3d at 41-42 (quoting *Sierra Club v. Pa. Pub. Util. Comm'n*, 702 A.2d 1131, 1134 (Pa. Cmwlth. 1997) (*en banc*), *aff'd*, 731 A.2d 133 (Pa. 1999) (additional quotation marks omitted)). This Court has explained, however, that

> [t]o come within the purview of [this] exception, the appellant must establish that: (1) "the duration of the challenged action is too short to be fully litigated prior to its cessation or expiration"; and (2) "there is a reasonable expectation that the same complaining party will be subjected to the same action again."

*Consol Pa. Coal*, 129 A.3d at 42 (quoting *Phila. Pub. Sch. Notebook*, 49 A.3d at 449).

The President Judge's dissenting opinion relies on this exception to the mootness doctrine, suggesting that PFA orders are of short duration and will, therefore, evade review. I respectfully disagree. Section 6108 of the Protection from Abuse Act[1] provides that "[a] protection order or approved consent agreement [(PFA order)] shall be for a fixed period of time not to exceed three years. The court may amend its [PFA] order . . . at any time upon subsequent petition filed by either party." 23 Pa.C.S. § 6108(d). Unlike President Judge Cohn Jubelirer, I believe that the three-year maximum effective period of a PFA order, which may also be extended by amendment if necessary, will typically be adequate for the completion of appellate review while the order is still in effect. The expiration of the PFA order in this case presents an unusual situation that is the exception rather than the rule. Moreover, there is nothing in the record of this case that suggests this Respondent is

---

[1] 23 Pa.C.S. §§ 6101-6122.

likely to face the same situation again in the future. Therefore, this case does not present an issue that is capable of repetition yet likely to evade appellate review, and it does not fit within an exception to the mootness doctrine.

In summary, the PFA order here was entered after a hearing sufficient to trigger a federal firearms prohibition. However, the PFA order expired during the pendency of this appeal, rendering the appeal moot. Accordingly, the appeal should be dismissed. For these reasons, I respectfully dissent.

_____
CHRISTINE FIZZANO CANNON, Judge

Judge Dumas joins in this dissent.